Ilhwan (Justin) Park – State Bar No. 250220
    justin.park@us.dlapiper.com
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4365
Facsimile: (202) 799-5385

David Farkas – State Bar No. 257137
    david.farkas@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067
Telephone:  (310) 595-3000
Facsimile:  (310) 595-3300

Attorneys for Applicant BigHit Music Co., Ltd.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

|  |  |
|---|---|
| In Re *Ex Parte* Application of BigHit Music Co., Ltd.,<br><br>        Applicant. | CASE NO.  26-80108<br><br>***EX PARTE* APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 FILED BY BIGHIT MUSIC CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently with:<br><br>    (1) Declaration of Claire Shin;<br>    (2) Proposed Subpoena; and<br>    (3) [Proposed] Order |

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

### *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782

BigHit Music Co., Ltd. ("Applicant") respectfully petitions this Court for an order authorizing limited discovery for use in civil litigation in the Republic of Korea ("South Korea")—or other jurisdictions as may be appropriate and necessary—pursuant to 28 U.S.C. § 1782 ("Application"). Applicant requests that the Court authorize the issuance of the proposed subpoena appended as Exhibit A ("Subpoena") to this Application. The Subpoena seeks limited discovery from X Corp. ("X") that is necessary to identify the owner(s)/user(s) of the X account, @jwngkcck, so that Applicant can name the identified individual(s) as the defendant(s) in a civil lawsuit in South Korea. The requested discovery is necessary so that Applicant can identify the relevant defendant(s) to protect its interests in protected materials that the defendant(s) knowingly stole and leaked without authorization, to Applicant's substantial economic and reputational harm.

**The Application meets the statutory requirements of § 1782:**

1) X is found within the Northern District of California;

2) The requested information is for use in a civil proceeding in Korea, which will be filed as soon as the defendant(s)'s identity is identified through this Application; and

3) As a party to the Korean litigation, Applicant is an "interested person" under 28 U.S.C. § 1782.

**The Application satisfies the four discretionary factors:**

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), the U.S. Supreme Court established four discretionary factors for courts to consider in § 1782 petitions, and each weighs in favor of granting this Application:

1) X is not a Korean company, is not subject to Korean discovery, and will not be a party in the Korean litigation;

2) Korean courts are receptive to assistance from United States federal courts;

3) Seeking discovery through this Application is not an attempt to circumvent foreign proof-gathering restrictions or policies; and

4) The discovery requests are not unduly intrusive or burdensome.

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicant files this Application *ex parte* following this Court's repeated statements that this is permissible because respondents may "object and exercise due process rights by bringing motions to quash the subpoenas after the court issues a Section 1782 order." *In re Levi Strauss & Co.*, No. 18-mc-80123-JSC, 2018 WL 3872790, at *4 (N.D. Cal. Aug. 15, 2018) (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)). Under Rule 7-10 of the Civil Local Rules of this Court, this Application does not require notice to X.

This Application is filed pursuant to 28 U.S.C. § 1782 and is based on this Application, the Memorandum of Points and Authorities in support thereto, the declaration of Claire Shin, the proposed order, any further oral and documentary evidence that may be introduced at or before the hearing of this Application, and all matters upon which judicial notice may be taken.

Applicant thus respectfully requests that this Court grant it permission to serve X with the subpoena attached hereto as Exhibit A.

DATED: April 9, 2026

By: */s/ David Farkas*
David Farkas – State Bar No. 257137
david.farkas@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067
Telephone:  (310) 595-3000
Facsimile:  (310) 595-3300

Ilhwan (Justin) Park – State Bar No. 250220
justin.park@us.dlapiper.com
DLA PIPER LLP US
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4365
Facsimile: (202) 799-5385

Attorneys for Applicant BigHit Music Co., Ltd.

3

## TABLE OF CONTENTS

I.    INTRODUCTION/ISSUES TO BE DECIDED ........................................................................... 1

II.   BACKGROUND ................................................................................................................. 3

    A.    Applicant ................................................................................................................ 3

    B.    The Subpoenaed Entity ......................................................................................... 5

    C.    The Account User's Misconduct ........................................................................... 5

    D.    The Korean Lawsuit .............................................................................................. 6

    E.    The Applicant's Application and the Proposed Subpoena ..................................... 6

III.  LEGAL STANDARD ....................................................................................................... 7

IV.   ARGUMENT ..................................................................................................................... 8

    A.    All Three Statutory Requirements of Section 1782 Are Met. ............................... 8

    B.    All Four Discretionary Factors Support this Application. .................................... 9

V.    CONCLUSION ................................................................................................................ 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In Re Ex Parte Application of HYBE Co., Ltd. and Belift Lab Inc.*,
　　Case No. 5:25-mc-80246-PCP ....................................................................................... 9

*In re Bleach, Inc.*,
　　No. 24-mc-80021-PCP, 2024 WL 1898450 (N.D. Cal. Apr. 30, 2024)............................. 8, 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　　542 U.S. 241 (2004) .......................................................................................*passim*

*In re Joint Stock Co. Raiffeinsenbank*,
　　No. 16-mc-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016)................................. 10

*Khrapunov v. Prosyankin*,
　　931 F.3d 922 (9th Cir. 2019)............................................................................... 7, 8

*In re Kim*,
　　No. 24-mc-80072-PCP, 2024 WL 1898453 (N.D. Cal. April 30, 2024) ............................... 11

*In re Kim*,
　　No. 24-mc-80178-BLF, 2024 WL 4093920 (N.D. Cal. Sept. 4, 2024) ................................. 11

*In re Levi Strauss & Co.*,
　　No. 18-mc-80123-JSC, 2018 WL 3872790 (N.D. Cal. Aug. 15, 2018)............................... 2, 7

*In re Request for Jud. Assistance from Seoul Cen. Dist. Ct.*,
　　No. 23-mc-80016-BLF, 2023 WL 2394545 (N.D. Cal. Mar. 7, 2023).................................. 11

*In re SPS I Fundo de Investimento de Acoes – Investimento no Exterior*, 22-mc-
　　00118 (LAK), 2024 WL 917236 (S.D.NY. March 4, 2024)....................................................... 9

*In re Starship Entm't*,
　　No. 23-mc-80147-BLF, 2023 WL 3668531 (N.D. Cal. May 24, 2023) ........................... 10, 11

*Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037 (N.D. Cal. Nov.
　　20, 2017).............................................................................................................................. 8

*United States v. Google LLC*,
　　690 F. Supp. 3d 1011 (N.D. Cal. 2023) ....................................................... 8, 10, 11

**Statutes**

28 U.S.C. § 1782 .................................................................................................*passim*

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION/ISSUES TO BE DECIDED**

Applicant BigHit Music Co., Ltd. ("BigHit" or "Applicant") requests the Court's assistance to identify the anonymous user of an X account (formerly Twitter, now a service offered by X Corp.) under the display name "BTS ARIRANG LEAK" and username @jwngkcck (the "Account"). In March 2026, this Account repeatedly infringed Applicant's copyrights by posting unreleased copyright materials of the Korean music group BTS, whose sound recording rights are owned by BigHit. While these recordings and music album photo covers have not been officially released, the Account has repeatedly distributed leaked versions of such materials without authorization. These actions violate the statutory and other legal interests of Applicant and have caused damage to the Applicant, including by substantially undermining its efforts to promote BTS. BTS and other prominent music groups invest extensive resources into planning and executing the most effective release of albums, songs, lyrics, and associated material as possible, so as to have the greatest possible impact on potential listeners and the market when the media are released. Unauthorized leaks severely undermine these efforts, destroying the excitement and anticipation for hearing never-before-released songs and causing substantial economic and reputational harm in the process.

Applicant is planning to imminently initiate a civil lawsuit against the user(s) of the Account in South Korea (the "Korean Lawsuit"). On information and belief, the Account's user(s) is/are likely Korean. The individual(s) must be identified so that Applicant can prosecute the Korean Lawsuit; otherwise, the deliberate misconduct of the individual(s) will go unsanctioned. Applicant, however, cannot request the account information from X in South Korea, as X resides outside of the jurisdiction of the South Korean courts. Applicant thus files this Application pursuant to 28 U.S.C. § 1782(a), seeking this Court's authorization to serve the Subpoena on X for limited discovery that would enable Applicant to obtain from the relevant South Korean telecommunications company(ies) the identity of the user(s) of the @jwngkcck X account.

This Court should grant the Application because Applicant has satisfied the three statutory requirements of Section 1782(a): (1) X maintains two offices within the Northern District of

California, such that X is found in this district; (2) information obtained through Applicant's Subpoena will be used to identify the defendant(s) to be named in Applicant's Korean Lawsuit; and (3) Applicant is an interested person because it will be the plaintiff in the Korean Lawsuit. This is a straightforward analysis that this Court routinely analyzes in similar circumstances.

This Court should also grant the Subpoena because all four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) support its issuance: (1) X is not a participant in the Korean Lawsuit; (2) the South Korean court presiding over the Korean Lawsuit will likely receive evidence obtained through the Subpoena; (3) Applicant does not seek to circumvent foreign proof-gathering restrictions or the policies of the United States; and (4) the Subpoena is narrowly tailored to obtain information sufficient to identify the defendant(s) and is not unduly intrusive or burdensome.

There is enhanced urgency to this Application because South Korean telecommunication companies only store identifying user data for ninety days, before it is purged under company policy. If the relevant South Korean telecommunications company(ies) purge(s) data pertaining to the Account, Applicant will be irreparably harmed by becoming unable to identify the user(s) of the Account, and thereby becoming unable to name the defendant(s) in the Korean Lawsuit. Time is therefore of the essence in obtaining a Subpoena to obtain the requested information from X.

Importantly, for purposes of this Application, this Court need not adjudicate, evaluate, or opine on the facts of the Account user(s)' wrongdoing or the merits of the Korean Lawsuit. The Court need only make the determination that the statutory requirements of 28 U.S.C. § 1782 are met, and that the discretionary factors set forth by the United States Supreme Court weigh in favor of granting the Application. These requirements and discretionary factors are all satisfied.

This Court has affirmed that *ex parte* procedures to submit this Application are permissible because respondents may "object and exercise due process rights by bringing motions to quash the subpoenas after the court issues a Section 1782 order." *In re Levi Strauss & Co.*, No. 18-mc-80123-JSC, 2018 WL 3872790, at *4 (N.D. Cal. Aug. 15, 2018) (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)).

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Accordingly, Applicant respectfully requests that the Court grant the Application and issue an order that authorizes Applicant to serve the appended Subpoena on X.

## II.    BACKGROUND

### A.    Applicant

BigHit is a corporation incorporated under the laws of South Korea and the owner of the sound recording master rights at issue in this Application. (Declaration of Claire Shin ("Decl.") at ¶ 3.) BigHit is engaged in the global entertainment business, including managing and training singers and musicians performing in the globally popular Korean pop music ("K-pop") genre. (*Id.* at ¶ 4.)

One of the music groups managed by Applicant is BTS, the internationally renowned artist group whose new album release is at the center of this dispute. BTS has redefined global music as the best-selling artist in South Korean history, with over 40 million albums sold and multiple Billboard/Grammy records.[1] They are the first Korean act to top the United States Billboard 200/Hot 100, the first to sell out Wembley Stadium, and have won Billboard Music Awards, AMAs, and earned multiple Grammy nominations.[2] BTS's success has been described as follows:

- The Global Superstars: "In an age of despair and division, a boy band from South Korea remixed the rules of pop and created a fandom bigger than Beatlemania."[3]

- The Record-Breakers: "BTS are known for their record-breaking achievements, including on Billboard's very own charts."[4]

- The Cultural Influencers: "Just as the Fab Four put England's Liverpool on the map, globalized youth culture and had multifaceted influence, the seven

---

[1] https://guinness-world-records.fandom.com/wiki/BTS.

[2] https://guinness-world-records.fandom.com/wiki/BTS.

[3] https://www.newyorker.com/culture/culture-desk/joining-the-bts-army.

[4] https://www.billboard.com/music/pop/every-bts-guinness-world-record-1235010255/.

3

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

members of BTS have surpassed mere pop stardom, having a profound impact on South Korea and the world."[5]

- Time Magazine chose BTS as the Entertainer of the Year in 2020 and Time Magazine's readers chose BTS as the 2018 Person of the year.[6]

- Guinness World Records: BTS was the fastest account to 1 million followers on TikTok and the most streamed group on Spotify.[7]

- YouTube: BTS's music videos "Dynamite" and "Butter" surpassed 2 billion and 1 billion views respectively, setting records for Korean groups.[8]

Social media is a vitally important resource that BigHit uses to enhance and grow the audiences and reach of BTS, while the fan engagement developed through social media enhances sales, fans' connections to the musicians, and related content. (*Id.*) BigHit's and its artists' business and reputation can be (and frequently are) dramatically impacted by statements made by their representatives, BigHit's artists, and members of the public on social media platforms, such as X. (*Id.*) BigHit and BTS invest extensive resources into planning and executing the most effective release of albums, songs, lyrics, and associated material as possible, so as to have the greatest possible impact on potential listeners and the market when the media are released. (*Id.* at ¶ 6.) Here, the Account's user(s) committed blatant acts of copyright infringement and trade secret infringement (subject to review under Korean law) publicly on X, targeting one of the most highly anticipated album releases of the year by BTS. The leak of BTS's album destroyed the element of

---

[5] https://www.silversea.com/blog/destinations/asia/what-to-know-about-bts-koreas-wildly-popular-band-changing-music-and-the-world.

[6] https://time.com/entertainer-of-the-year-2020-bts/; https://time.com/5472018/person-of-the-year-poll-winner/.

[7] https://guinness-world-records.fandom.com/wiki/BTS.

[8] https://www.youtube.com/watch?v=gdZLi9oWNZg&list=RDgdZLi9oWNZg&start_radio=1; https://www.youtube.com/watch?v=WMweEpGlu_U&list=RDWMweEpGlu_U&start_radio=1.

4

surprise that Applicant was building up towards its release, negatively impacting its reputation and sales. (*Id.* at ¶ 9.)

### B.    The Subpoenaed Entity

X is a Nevada corporation headquartered in Bastrop, Texas. (*Id.* at ¶ 7.) Upon information and belief, X maintains offices in this District in San Jose and Palo Alto, California. (*Id.*) X falls outside the jurisdiction of the courts of South Korea. (*Id.*)

### C.    The Account User's Misconduct

One of the music groups that Applicant manages is K-pop sensation BTS. (*Id.* at ¶ 5.) On March 20, 2026, BTS released "Arirang," which is a studio album containing fourteen songs. (*Id.* at ¶ 8.) Applicant holds various rights as pertaining to Arirang. (*Id.*)

Yet, prior to the official public release of Arirang, Applicant discovered that BTS's not-yet-released songs, lyrics, concept art, cover images, and associated information were being published without authorization through the Account at issue in this Application. (*Id.* at ¶ 9.) In early March 2026, the Account repeatedly distributed unauthorized, leaked, and unreleased BTS songs, lyrics, concept art, and cover images that had not been officially released or licensed for public distribution by the rights holder, BigHit. (*Id.*) The Account's display name "BTS ARIRANG LEAK" expressly confirms the illicit purpose of the Account, and the Account's user(s) even express(es) awareness of potential legal issues by stating in the Account's biography "fan account | not violated any rules, no copyright, following all @x's rules." (*Id.*)

The user(s) conduct caused substantial harm to Applicant's efforts to enhance the public's excitement about the anticipated official release of the Arirang album, irreparably releasing copyrighted and not-yet-publicized information prematurely. (*Id.*) The Account's user(s) was expressly warned to stop its "unauthorized activity," and was notified that "we request that you remove the files from your system, including any mirrored or duplicate copies of those files from your system, and/or that you disable all access to the infringing files and associated links." (*Id.*)

The Account does not contain any identifying information, as both the display name and username are anonymous. (*Id.*) The profile picture appears to depict an individual of Korean ethnicity, suggesting that the user(s) is likely a Korean (particularly given the subject of the

5

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

account: a Korean pop music group), not American, citizen. (*Id.*)

Upon discovery of the leaks, Applicant promptly reported the copyright violation to X. (*Id.* at ¶ 10.) Subsequently, the Account's posts have been deleted and the Account's username has been changed to ☙. (*Id.*) Nonetheless, the Account user(s)'s conduct violates the law and has damaged Applicant's business and reputation. (*Id.*)

**D.      The Korean Lawsuit**

The Applicant has taken steps to prepare a civil lawsuit to be filed in South Korean courts, asserting various good faith claims against the Account's user(s), including but not limited to copyright and trade secret violations, misappropriation, breach of confidentiality obligations, conversion, and other civil torts cognizable under South Korean law. (*Id.* at ¶ 13) By posting unreleased sound recordings by BTS just days before those recordings were scheduled to be officially released, the anonymous user(s) of the Account has/have harmed the Applicant's reputation and posed monetary harms, including but not limited to loss of product sales and other marketing damages. (*Id.*)

Applicant seeks to hold those responsible accountable and to recover damages through legal proceedings in South Korea, but cannot do so unless it identifies the Account's user(s). (*Id.*) If X was subject to the jurisdiction of South Korean courts, Applicant would be able to obtain the requested information through regular discovery proceedings in South Korea. (*Id.* at ¶ 11.) However, X is a Nevada corporation with its principal office located in Bastrop, Texas, and that South Korean courts thus do not have jurisdiction over X, which is why Applicant cannot seek discovery from X in the lawsuit proceeding in South Korea. (*Id.* at ¶ 11.)

**E.      The Applicant's Application and the Proposed Subpoena**

Applicant requests that the Court permit limited discovery regarding the user(s)'s conduct by allowing Applicant to serve the Subpoena on X. This discovery is necessary to obtain information sufficient to identify the owner(s) and user(s) of the Account, and is particularly important given the user(s)'s apparent attempts to hide his or her identity (as shown by the anonymized display name "BTS ARIRANG LEAK" and username @jwngkcck). (*Id.*) Specifically, the Subpoena requests three categories of documents: (1) documents sufficient to

6

identify the account identifier(s), display name(s), creation date(s), name(s), gender(s), date(s) of birth, mailing and physical address(es), email address(es), phone number(s), and other contact information of "the person(s) who created, used, and/or otherwise logged in to" the Account; (2) access logs from January 1, 2026 through the date X responds to the Subpoena (including but not limited to the dates, timestamps, IP addresses, port numbers, and destination IP addresses) associated with the Account; and (3) documents sufficient to identify the name(s), gender(s), date(s) of birth, mailing and physical address(es), email address(es), phone number(s), and other contact information of "the person(s) associated with credit card(s), bank account(s), and/or other electronic commerce details registered with" the Account. (*See* Subpoena) The third request specifically states that it "does not seek any financial transaction information such as credit card numbers, bank account numbers, or electronic commerce account numbers or passwords." (*Id.*) This discovery should be permitted because it will allow Applicant to identify the defendant(s) for its soon-to-be-filed Korean Lawsuit.

**III.    LEGAL STANDARD**

*Ex parte* procedures to submit this Application are permissible because respondents may "object and exercise due process rights by bringing motions to quash the subpoenas after the court issues a Section 1782 order." *In re Levi Strauss & Co.*, No. 18-mc-80123-JSC, 2018 WL 3872790, at *4 (N.D. Cal. Aug. 15, 2018) (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)). Section 1782(a) authorizes a district court to order a person "resid[ing] or "found" in that district to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, . . . upon the application of any interested person." 28 U.S.C. § 1782(a); *Intel Corp.*, 542 U.S. at 246.

Under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (the seminal case on 28 U.S.C. § 1782 applications), the United States Supreme Court held that Section 1782 requires the applicant to meet three threshold conditions: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v.*

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

*Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citing *Intel Corp.*). Once an applicant satisfies these three requirements, a district court has "substantial discretion" to permit the requested discovery. *Id.* at 926.

The Supreme Court also held that district courts should consider the following four discretionary factors: "(1) whether the 'person from whom discovery is sought is a participant in the foreign proceeding'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance'; (3) whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *United States v. Google LLC*, 690 F. Supp. 3d 1011, 1018–19 (N.D. Cal. 2023) (quoting *Intel Corp.*, 542 U.S. at 264–65).

Because this Application satisfies the three statutory requirements of Section 1782(a) and all four *Intel Corp.* factors weigh in favor of permitting the discovery requested in the Subpoena, the Court should grant the Application.

## IV.    ARGUMENT

### A.    All Three Statutory Requirements of Section 1782 Are Met.

First, X is found in this Court's District, as X maintains offices in San Jose and Palo Alto, California. (Decl., ¶ 7.) Offices such as these satisfy the first statutory requirement of Section 1782(a). *See Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (finding that Microsoft was "found" in the Northern District of California based on its operation of two corporate offices in this District; in Mountain View and San Francisco).

Second, this discovery will be used in a proceeding before a foreign tribunal. In enacting Section 1782, "Congress recogni[zed] that judicial assistance would be available 'whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature.'" *Intel*, 542 U.S. at 259. Applicant will use the requested discovery to identify the user(s) of the Account, which will, in turn, allow Applicant to name the user as a defendant in the Korean Lawsuit. (Decl. at ¶ 12–13.) Thus, Applicant has satisfied the second statutory requirement. *See In re Bleach, Inc.*, No. 24-mc-80021-PCP, 2024 WL 1898450, at *1–2 (N.D. Cal. Apr. 30, 2024)

(permitting subpoena on X for personally identifiable information of an anonymous X user, which the applicant intended to use to file a lawsuit against that user in Japan). This discovery is permissible under Section 1782 even though the Korean Lawsuit has not yet been filed, because Applicant is planning to imminently initiate a civil lawsuit as soon as the identity of the user(s) is discovered. (Decl. at ¶ 12–13.) *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) (the proceeding for which discovery is sought must be in "reasonable contemplation"); *In re SPS I Fundo de Investimento de Acoes – Investimento no Exterior*, 22-mc-00118 (LAK), 2024 WL 917236 (S.D.N.Y. March 4, 2024) (granting application for discovery for use in contemplated, but not yet filed, lawsuit in foreign country).

The relief sought in this Application is particularly urgent, as South Korean telecommunication companies only store identifying user data for ninety days, before it is purged under company policy. (Decl. at ¶ 15.) Thus there is an urgent need to promptly identify information (including the user(s) phone number(s)) from X, so that Applicant may use the information to identify the user(s) through further efforts in South Korea, as necessary. Unless this Court grants this Application and orders X to respond within a prompt timeframe, it is highly likely that Applicant will be forever unable to ascertain the identity of the Account's user(s). This Court has in the past granted the requested relief on the timeframes set forth in the Proposed Order attached herewith. *See In Re Ex Parte Application of HYBE Co., Ltd. and Belift Lab Inc.*, Case No. 5:25-mc-80246-PCP, ECF No. 7, Order Granting Ex Parte Application.

Third, Applicant is an "interested person" under Section 1782 because it will be the plaintiff in the anticipated Korean Lawsuit. (Decl. at ¶¶ 12–13). *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]'") (alteration in original).

Because Applicant has satisfied the three statutory requirements of Section 1782(a), the Court has the authority to grant the relief sought by the Application.

**B.     All Four Discretionary Factors Support this Application.**

All four of the discretionary *Intel* factors weigh in favor of this Court granting the Application.

9

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

First, X will not and cannot be a "participant in the foreign proceeding," *Intel Corp.*, 542 U.S. at 264, as it lies outside the jurisdiction of South Korean courts. (Decl. at ¶ 7.) Where jurisdiction is lacking, "the need for § 1782(a) aid" to obtain the requested discovery is "apparent." *Google*, 690 F. Supp. 3d at 1019.

Second, there is no indication that the Korean courts are not receptive to United States Federal Court assistance. "[T]his factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence." *Id.* Notably, South Korean courts have not ordered the rejection of evidence obtained through a Section 1782 subpoena. (Decl. at ¶ 14; *see In re Starship Entm't*, No. 23-mc-80147-BLF, 2023 WL 3668531, at *3 (N.D. Cal. May 24, 2023) (granting Section 1782 application for discovery to identify the anonymous user of a YouTube channel posting about K-pop singers); *In re Joint Stock Co. Raiffeinsenbank,* No. 16-mc-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("authoritative proof" would be needed that foreign courts would reject the requested discovery)).

Third, the Application does not "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 264–65. "[A]bsence of evidence of attempted circumvention of the foreign tribunal's proof-gathering procedures weighs in favor of an application under § 1782." *Google*, 690 F. Supp. 3d at 1021. There are no restrictions or policies of the United States or Korea that would prohibit granting this Application. Indeed, this is the only means for Applicant to collect the information sought, because X is not subject to the jurisdiction of South Korean courts. (Decl. at ¶¶ 11–13.)

Fourth, the Subpoena is not "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *Google*, 690 F. Supp. 3d at 1023 (citation omitted). Here, information is sought only about a single X account for a limited purpose: to ascertain the identity of the user(s) so that Applicant may name the appropriate defendant(s) in the Korean Lawsuit. (Decl. at ¶¶ 11–13.) The requests are narrowly tailored to this purpose—the Subpoena does not seek the content of any communications associated with the Account, does not seek sensitive financial information, and only seeks access

10

logs within a limited timeframe pertinent to (and immediately preceding and spanning) the user(s)' misconduct. (*See* Subpoena.)

All of the information requested in the Subpoena seeks standard identifying and contact information of the user(s) of the Account, information that has previously been sought in approved applications under Section 1782 in many other cases in this Court. *See, e.g.*, *Google*, 690 F. Supp. 3d at 1023 (granting application seeking name, gender, phone number, and date of birth); *In re Request for Jud. Assistance from Seoul Cen. Dist. Ct.*, No. 23-mc-80016-BLF, 2023 WL 2394545, at *3 (N.D. Cal. Mar. 7, 2023) (granting application seeking names, dates of birth, email addresses, phone numbers, and IP addresses); *Starship Entm't*, 2023 WL 3668531, at *4 (granting application seeking "names, addresses, email addresses, and telephone numbers, as well as identifying access log information, such as IP addresses," from three months prior to order through date of response to subpoena); *In re Kim*, No. 24-mc-80072-PCP, 2024 WL 1898453, at *1–2 (N.D. Cal. April 30, 2024) (granting application seeking "name, gender, date of birth, address, email address, and telephone number … as well as the access logs (including timestamps, IP addresses, and port numbers)"); *In re Kim*, No. 24-mc-80178-BLF, 2024 WL 4093920 (N.D. Cal. Sept. 4, 2024) (granting application seeking "names, dates of birth, addresses, e-mail addresses, telephone numbers, and banking information"). Here, the requested information is even more relevant and reasonably tailored because "the names and addresses on file with the X account may be fictitious and insufficient alone to identify the X user." *In re Bleach, Inc.*, 2024 WL 1898450, at *2; *see also* Decl. at ¶¶ 9–11.[9]

Because all four discretionary factors weigh in Applicant's favor, this Court should grant the Application.

**V.    CONCLUSION**

For the foregoing reasons, the Court should grant the Application and enter an order

---

[9] There are no First Amendment concerns raised by unmasking the anonymous poster behind the Account, as the poster is likely a Korean (not American) citizen (Decl. at ¶ 9), so "there is nothing in the record indicating that the anonymous speaker is entitled to First Amendment protections." *Google*, 690 F. Supp. 3d at 1023 (granting application to identify an anonymous online speaker to name as defendant in a South Korean court proceeding).

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

authorizing Applicant to serve the appended Subpoena on X, and requiring X to respond within the requested time period subject to the terms set forth in the Proposed Order attached hereto.

DATED: April 9, 2026

By: */s/ David Farkas*

David Farkas – State Bar No. 257137
david.farkas@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067
Telephone:  (310) 595-3000
Facsimile:  (310) 595-3300

Justin Ilhwan Park – State Bar No. 250220
justin.park@us.dlapiper.com
DLA PIPER LLP US
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4365
Facsimile: (202) 799-5385
Attorney for Applicant BigHit Music Co., Ltd.

12

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782